UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:17-cv-00758-SEB-DML |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation on its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Donald Coleman is not disabled.

## **Introduction**

Mr. Coleman applied for Supplemental Security Income (SSI) under Title XVI of the Social Security Act on November 14, 2013, alleging that he has been disabled since March 26, 2013. Acting for the Commissioner of the Social Security Administration following a hearing in October 2015, an administrative law judge (ALJ) issued a decision on December 9, 2015, finding that Mr. Coleman has not been disabled since the date his application was filed. The Appeals Council denied review of the ALJ's decision on January 26, 2017, rendering the ALJ's decision for

the Commissioner final. Mr. Coleman timely filed this action under 42 U.S.C. §405(g) for review of the Commissioner's decision.

Mr. Coleman argues that the Commissioner's decision must be reversed and remanded because the ALJ erred in assessing his residual functional capacity, in evaluating his subjective allegations, and in addressing the vocational expert's testimony.

The court will first describe the legal framework for analyzing disability claims and the standard of review and then address the assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Mr. Coleman is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C.

---

[1] Two disability-benefits programs are available under the Social Security Act: DIB benefits under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to SSI benefits. For DIB benefits, materially identical provisions appear in Title II and at 20 C.F.R. § 404.1501 *et seq.*

§1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks if there is work in the relevant economy that the

claimant can perform, based on his age, work experience, education, and RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and RFC. *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.920(c)(2).

## **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence, but he cannot ignore an entire line of evidence that undermines his conclusions, and he must provide sufficient detail to allow a reviewing court to trace the path of his reasoning. *See Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012).

4

The ALJ's decision must be internally consistent and must build a logical bridge from the evidence to the conclusions. *See Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Coleman, a Gulf War veteran, was 47 years old on the alleged disability onset date. The ALJ found that he had not engaged in substantial gainful activity since his application date of November 14, 2013. At steps two and three, the ALJ found that Mr. Coleman has the following severe impairments: degenerative changes of the left shoulder; mild degenerative changes of the left ankle; mild canal stenosis of the lumbar spine; chronic fatigue syndrome; chronic obstructive pulmonary disease; history of substance abuse; depressive disorder; and post-traumatic stress disorder. (R. 28). The ALJ determined that none of these meets or medically equals the severity of a listed impairment. (R. 29).

In the RFC, the ALJ limited Mr. Coleman to a reduced range of medium work as defined in 20 C.F.R. § 416.967(c), noting that he "can lift and/or carry 25 pounds frequently and 50 pounds occasionally; and sit, stand, and/or walk for 6 hours each in an 8-hour workday." (R. 30). The ALJ included the following restrictions:

> The claimant can frequently operate a motor vehicle; have frequent exposure to weather, humidity/wetness, extreme cold, and extreme heat; and have frequent exposure to dust, odors, fumes, and pulmonary irritants. [He] is limited to simple, routine tasks requiring only simple work-related decisions. [He] can occasionally interact with coworkers, supervisors, and the public.

(R. 30). Based on the testimony of a vocational expert (VE), and Mr. Coleman's age, education, work experience, and RFC, the ALJ decided that he is capable of performing jobs that exist in significant numbers in the national economy such as hand packager, store laborer, and hospital cleaner. (R. 36-37). The ALJ concluded at step five that Mr. Coleman is not disabled under the Social Security Act.

## II. The Assertions of Error

### A. The RFC Finding

Mr. Coleman argues that the ALJ erred in assessing his RFC. The Magistrate Judge agrees and therefore recommends that the District Judge reverse and remand for further proceedings.

In assessing the RFC, the ALJ must incorporate all of the claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ must explain how the evidence supports each conclusion in the RFC finding, citing specific medical facts and nonmedical evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); SSR. 96-9p at *7. And the ALJ "must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford,* 227 F.3d at 870; *see also Scott Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) ("ALJ did not identify any medical evidence to substantiate her belief that [claimant] is capable of meeting those physical requirements.")

6

The ALJ found that Mr. Coleman has the RFC for medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of up to 25 pounds," 20 C.F.R. § 416.967(c), with some restrictions. Mr. Coleman argues that the finding he was capable of medium work is erroneous because it lacked an evidentiary basis and no doctor opined that he was capable of work at this exertional level. The Commissioner responds that the ALJ—not a doctor— has the responsibility for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). True enough; nonetheless, the RFC assessment must be based on medical evidence or other evidence in the record. *Clifford*, 227 F.3d at 870.

The Commissioner also argues that the state agency reviewing physicians opined Mr. Coleman was capable of work at all exertional levels. But as she acknowledges, the ALJ did not accept their opinions. The Commissioner hypothesizes that "the ALJ ultimately agreed with [the state agency reviewing physicians] that Plaintiff's limitations were not so severe as to prevent [him] from working" and that their opinions were substantial evidence he was not disabled. (Filing No. 18 at 9). While broadly speaking, the reviewing physicians' opinions do support the ALJ's ultimate conclusion, there are many different paths to the conclusion that a claimant is not disabled, and the reviewing physicians and the ALJ reached their conclusions by separate paths. Importantly, the reviewing physicians' opinions were given in February and July 2014, which was before Mr. Coleman sustained an injury to his left shoulder in September 2014 after lifting 40 pounds and before he obtained an x-ray showing moderate to significant

degenerative changes in his shoulder joint. (*See* R. 711, 1011). The state agency reviewing physicians gave their opinions without the benefit of this evidence, which could reasonably make a difference in their opinions as to Mr. Coleman's lifting ability.

As the Commissioner points out, Marc Wooten, M.D., also gave an opinion as to Mr. Coleman's physical capacity to work—he thought Mr. Coleman's back condition and chronic fatigue syndrome would limit him by eliminating strenuous exertion, standing for a long time, and walking a long distance. (R. 538-39). And unlike the state agency reviewing physicians' opinions, Dr. Wooten's opinion was based on an examination of Mr. Coleman. Generally, more weight is given to a medical opinion of a source who examined the claimant than to that of a non-examining source. 20 C.F.R. § 416.927(c)(1).

The Commissioner seems to suggest that the ALJ "split the difference" between the different RFC assessments in the record, resulting in an RFC for a reduced range of medium work, and she maintains that this was appropriate. However, she cites no authority for such a proposition, and such an approach has been rejected by several other district courts within the Seventh Circuit. *See, e.g.*, *Smith v. Colvin*, 208 F. Supp. 3d 931, 942 (N.D. Ind. 2016) ("the ALJ may not discard the RFCs in the record and instead construct his own 'middle ground' RFC assessment"); *Norris v. Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011) ("The ALJs are not permitted to construct a "middle ground' RFC without a proper medical basis."). The ALJ was "playing doctor" when he concluded that Mr. Coleman was

8

capable of a reduced range of medium work without medical evidence to support that conclusion. This requires reversal. *See Briscoe*, 425 F.3d at 352.

There is another error in the RFC assessment. The ALJ limited Mr. Coleman to "6 hours of standing and walking each because of increased drowsiness while sitting due to chronic fatigue," citing hearing testimony as support. (R. 34). Thus, the AJ accepted Mr. Coleman's claim of a limitation on sitting due to fatigue. However, Mr. Coleman also testified to fatigue, drowsiness, and the need to sleep after activities in addition to sitting. For example, he said he can walk 6 blocks, but then needs to sleep; he can stand for 2 hours, but then he feels tired and needs to sit down. (R. 65-66). The ALJ apparently did not accept this testimony because these limitations were not reflected in the RFC assessment.[2] However, the ALJ should have explained why these reported limitations could not reasonably be accepted. *See* SSR 96-8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")

Another error in assessing Mr. Coleman's RFC relates to his chronic fatigue syndrome. The Commissioner argues that a mere diagnosis of chronic fatigue syndrome did not establish specific work-related limitations. Mr. Coleman is not making such an argument. Instead, he argues that since the ALJ found his chronic fatigue syndrome was a severe impairment, which by definition "significantly limit[]

---

[2] Mr. Coleman's testimony that he could walk 6 blocks does not support the finding that he can stand and/or walk for 6 hours. *See Scott*, 647 F.3d at 740 (stating that an ability to walk 2 blocks "hardly demonstrates an ability to stand for 6 hours").

9

[his] physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c), the ALJ was required to explain why he accepted some of Mr. Coleman's reported limitations from chronic fatigue, but not others. Mr. Coleman is right. *See* SSR 96-8p.

The Commissioner also argues that the ALJ properly discounted Dr. Wooten's opinion regarding Mr. Coleman's limitations, noting Mr. Coleman had no specific care for chronic fatigue syndrome. However, the Commissioner fails to suggest what treatment Mr. Coleman should have received. According to the Centers for Disease Control and Prevention website, "[t]here is no cure or approved treatment for ... chronic fatigue syndrome." https://www.cdc.gov/me-cfs/treatment/index.html (last visited 11/8/2017). Thus, the lack of specific care for chronic fatigue syndrome does not justify the decision to discount Dr. Wooten's opinion.

Mr. Coleman contends that the ALJ erred in assessing his mental RFC. In assessing the RFC, the ALJ must incorporate all of the claimant's limitations supported by the medical record, including mental limitations such as deficiencies in concentration, persistence or pace. See, *e.g.*, Varga, 794 F.3d at 813; *O'Connor-Spinner*, 627 F.3d at 619. Here, the ALJ found that Mr. Coleman had moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence, or pace. (R. 29). The ALJ's RFC finding limited Mr. Coleman "to simple, routine tasks requiring only simple work-related decisions" and to occasional interaction with coworkers, supervisors, and the public. (R. 30). The

ALJ explained that this finding was based in part on the opinion of consulting psychologist Donna Turner-Campbell who examined Mr. Coleman and found him able to "learn, remember and comprehend simple instructions" and able to "attend [and] concentrate long enough to complete simple tasks." (R. 417). She also found him able to "interact appropriately with co-workers, supervisors and the general public in a typical work setting." (*Id.*)

The mental RFC finding seems to account for the moderate mental deficiencies the ALJ found Mr. Coleman to have, and it has a basis in Dr. Turner-Campbell's opinions. Thus, the RFC seems to have accounted both for Mr. Coleman's ability to learn tasks of a given complexity and his ability to stick with simple tasks over time. *See O'Connor-Spinner*, 620 F.3d at 620 (noting that these abilities are not the same).

However, the ALJ reasoned that Mr. Coleman was limited to simple tasks and decision-making because of his depression, purportedly based on his testimony that his depression affects his concentration. (R. 35). But Mr. Coleman testified that his fatigue affects his mental capacity, focus, attention span, and concentration. (R. 63, 74). As noted, the ALJ did not explain why he accepted some of Mr. Coleman's reports of limitations from chronic fatigue, but not others. The court is unable to determine whether the ALJ accepted Mr. Coleman's report of mental limitations due to fatigue. It seems that the ALJ may have misunderstood Mr. Coleman's testimony attributing mental difficulties to fatigue—not depression—and further consideration is necessary.

11

Moreover, Mr. Coleman testified that his fatigue is constant (R. 63), suggesting that its resulting limitations would be constant as well, but the ALJ found that depression affected Mr. Coleman's concentration only "at times." (R. 35). The ALJ further justifies the mental RFC by referring to Dr. Jacqueline M. Quinn-Tan's finding that Mr. Coleman had normal attention and concentration (R. 35), but such a finding would be inconsistent with the ALJ's own finding that Mr. Coleman, in fact, had moderate deficiencies in concentration, persistence or pace. Furthermore, Dr. Quinn-Tan noted that Mr. Coleman's attention and concentration were "wnl *for him*" (R. 592 (emphasis added)), which suggests they were within normal for *Mr. Coleman*, but not necessarily for a person without any mental limitations.

Mr. Coleman maintains that the ALJ failed to adequately account for his moderate difficulties with social functioning, but the ALJ's decision sufficiently explains the ALJ's reasoning, and the limitation to occasional interaction with coworkers, supervisors, and the public finds sufficient support in the record. And because the ALJ did not find Mr. Coleman was disabled, the ALJ was not required, contrary to Mr. Coleman's argument, to conduct an analysis under SSR 13-2p to determine whether alcohol use was material to the disability finding. *See Beerman v. Colvin*, Case No. 1:14-cv-393, 2016 WL 922874, at *7 (N.D. Ind. Mar. 11, 2016) (since the ALJ found the claimant was not disabled, he did not have to determine whether his drug or alcohol addiction was material).

As discussed, the ALJ's explanation of how he arrived at the RFC is insufficient to allow the court to trace the path of his reasoning, requiring remand. *See, e.g., McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (stating that "the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner").

### B. Assessment of Mr. Coleman's Subjective Complaints

In addition, Mr. Coleman argues that the ALJ erred in assessing his subjective allegations. In finding that Mr. Coleman was not precluded from basic work-related activities, the ALJ first relied on the fact that Mr. Coleman could perform activities of daily living such as cooking simple meals and doing chores. "But without acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [Mr. Coleman's] successful performance of life activities as a basis to determine that [his] claims of a disabling condition were not credible." *Ghiselli v. Colvin*, 837, 778-79 (7th Cir. 2016). The ALJ's decision does not reflect such consideration. While Mr. Coleman said he had "no problems" performing such activities, his activities are not inconsistent with an inability to work full-time or with his claimed limitations. Further, the ALJ did not acknowledge the evidence that despite being able to perform daily activities (at "a slower pace" (R. 417)), Mr. Coleman is constantly tired and naps between 3 and 4 hours a day. (R. 83).

Furthermore, the ALJ did not fully credit Mr. Coleman's claimed symptoms and limitations from his chronic fatigue. As noted earlier, the ALJ credited some of

13

his complaints, but not others, and did not explain the reason for the difference. The ALJ also relied on the fact that Mr. Coleman had no specific care for his chronic fatigue syndrome. But, as explained, this was error as there is no suggestion in the record that any treatment was available or recommended.

On remand, the ALJ should reevaluate Mr. Coleman's subjective complaints of symptoms and limitations.

### C. Consideration of the VE's testimony

Mr. Coleman contends that the ALJ erred in addressing the VE's testimony, but his argument is based on a flawed premise. The ALJ asked the VE if an individual could work if, among other things, he needed two 30-minute rest breaks in addition to regularly scheduled breaks. The VE answered that work would be precluded. (R. 112). However, the ALJ did not find that Mr. Coleman required such rest breaks during the day. Since the ALJ made no such finding, merely asking the hypothetical did not require further evaluation from him. Nonetheless, reconsideration of Mr. Coleman's subjective complaints and RFC on remand may result in the need for additional testimony from a VE. The Magistrate Judge trusts that the ALJ will obtain further testimony, if appropriate.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the Court grant Plaintiff's Motion for Summary Judgment (Doc. No. 16) and remand this action pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and recommendation.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

So ORDERED.

Date: 12/6/2017

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system